**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:<br><br>JASON M. KAHAN,<br><br>Debtor. | Chapter 7<br><br>Case No. 24-11592 |
| PBTC RECOVERY PARTNERS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HUNTER PENN aka ALEX COLVIN, NILS TROSTERUD, SISSEL TROSTERUD, QUANTUM RESOURCE GROUP QRG AS, NORDCAP ADVISORS AS, AND JOHN DOES 1-10,<br><br>Defendants. | Adv. Pro. No. ______ |

**AFFIDAVIT OF ADAM D. STEIN-SAPIR IN SUPPORT OF MOTION BY PBTC RECOVERY PARTNERS, LLC FOR INJUNCTIVE RELIEF**

I, Adam D. Stein-Sapir, declare, pursuant to section 1746 of title 28 of the United States Code, that:

1. I am over eighteen (18) years of age and am competent to testify to the matters set forth herein.

2. I am an authorized representative of PBTC Recovery Partners, LLC ("PBTC"), the Plaintiff in the above-captioned adversary proceeding.

3. I have personal knowledge of the facts set forth in this affidavit (the "Affidavit"), or have reviewed documents, records, and other materials forming the basis for the statements made herein, and if called upon to testify, could and would testify to the matters stated. This Affidavit is submitted in support of the *Motion by PBTC Recovery Partners, LLC for*

*Preliminary Injunction and Related Relief (Expedited Determination Requested)* (the "Motion").

**The Debtor's Chapter 7 Case and PBTC's Purchase of the Bitcoin Assets**

4. Jason M. Kahan (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 7, 2024 in the United States Bankruptcy Court for the District of Massachusetts (the "Court"). *See In re Kahan*, Case No. 24-11592 (Bankr. D. Mass.) (the "Chapter 7 Case").

5. On August 27, 2024, Donald Lassman (the "Bankruptcy Trustee") was appointed as the Chapter 7 Trustee in the Debtor's bankruptcy case.

6. PBTC is a Delaware limited liability company that purchased certain Bitcoin assets from the Debtor's Chapter 7 bankruptcy estate pursuant to a court-approved sale.

7. The Debtor's bankruptcy schedules, *see* [Docket No. 36], Schedule A/B at 3, listed approximately $110.4 million in Bitcoin, consisting of approximately 1,800 Bitcoin ("BTC" or "Bitcoin") together with associated wallets, wallet addresses, private keys, seed phrases, and access credentials (collectively, the "Bitcoin Assets"). The "Bitcoin Assets" are more fully described in paragraph A of Exhibit A to the Bill of Sale attached to the Appendix as Exhibit A.[1]

8. In early January 2026, after approximately fifteen months of unsuccessful efforts to recover the Bitcoin Assets, private keys, or other access credentials, the Bankruptcy Trustee initiated a court-supervised process to sell the estate's rights in the Bitcoin Assets and related

[1] Concurrently with the filing of this Affidavit, PBTC has filed the *Appendix In Support of Motion by PBTC Recovery Partners, LLC for Preliminary Injunction and Related Relief* (the "Appendix"). For the avoidance of doubt, the term "Bitcoin Assets" refers to the Bitcoin and related access credentials. The term "Purchased Assets" refers to all assets described in Exhibit A to the Bill of Sale. *See* Appendix, at Ex. A (Bill of Sale).

recovery claims (collectively, the "Purchased Assets").[2] On May 6, 2026, the Bankruptcy Trustee entered into an Asset Purchase Agreement (the "APA") with Pioneer Funding Group, LLC ("Pioneer"), PBTC's predecessor-in-interest.[3]

9. On July 17, 2026, the Court entered the *Order (I) Authorizing And Approving The Sale Of Certain Of The Debtor's Assets Free And Clear Of Liens, Claims, Encumbrances And Other Interests, And (II) Granting Related Relief* (the "Sale Order") [Docket No. 343], under which the Court found that the *Notice Of (A) Proposed Sale Of Certain Assets Of The Debtor's Estate Pursuant To Section 363 Of The Bankruptcy Code, Free And Clear Of Liens, Claims, Encumbrances And Interests, (B) Sale Procedures, (C) Deadlines For Submitting Overbids Or Objections, And (D) Hearing Date* [Docket No. 275] (the "Sale Notice") was provided to all parties the Bankruptcy Trustee believed may be in possession or control of the Purchased Assets (which include the Bitcoin Assets), including Defendants Penn, Nils Trosterud, Sissel Trosterud, Quantum Resource Group QRG AS ("Quantum"), and NordCap Advisors AS ("NordCap"). *See* Certificate of Service [Docket No. 276].

10. Pursuant to the Sale Order, PBTC acquired exclusive ownership and possessory rights to the Bitcoin Assets, including the right to pursue recovery actions as successor-in-interest to the Chapter 7 bankruptcy estate. The Sale Order explicitly requires all third parties, including the named Defendants, to immediately deliver possession, control, and access to the Bitcoin Assets to PBTC. Sale Order, ¶¶ LL, 15.

---

[2] *Chapter 7 Trustee's Motion for: (I) Entry of an Order (A) Approving Procedures Governing Trustee's Proposed Sale of Certain of the Debtor's Assets Pursuant to Section 363 of the Bankruptcy Code, Free and Clear of Liens, Claims, Encumbrances and Other Interests, (B) Approving Form and Manner of Notice of Sale, and (C) Granting Related Relief; and (II) Authority to Sell Certain of the Debtor's Assets Pursuant to Section 363 of the Bankruptcy Code, Free and Clear of Liens, Claims, Encumbrances and Other Interests* [Docket No. 260] (the "Sale Motion"). The "Purchased Assets" include all assets described in Exhibit A to the Bill of Sale. *See* Appendix, at Ex. A (Bill of Sale).

[3] On June 26, 2026, Pioneer assigned its rights under the APA to PBTC [Docket No. 284].

11. Hunter Penn a/k/a Alex Colvin, Nils Trosterud, Sissel Trosterud, Quantum, and NordCap (collectively, "Defendants") have been identified as persons who possess, control, access, or have interfered with the Bitcoin Assets belonging to PBTC.

12. On July 31, 2026, PBTC, through its counsel, sent written turnover demands (the "Turnover Demand Letters") to Penn, Nils Trosterud, Quantum, and NordCap by email and overnight mail, demanding immediate turnover of all Bitcoin Assets in their possession, custody, or control, as required by the Sale Order. *See* Appendix at Ex. Q (Turnover Demand Letters). As of the date of this Affidavit, no Defendant has responded to the Turnover Demand Letters or surrendered any Bitcoin Assets, private keys, or access credentials to PBTC.

**The Debtor's Acquisition and Loss of the Bitcoin Assets**

13. The Debtor, Jason Kahan, has testified that in or around 2013, he purchased approximately 2,000 Bitcoin, but later lost access to those Bitcoin. *See* Appendix, Ex. C, at 30:9-10 (Tr. Oct. 8, 2024 Section 341 Meeting). Kahan testified that in early 2021 or 2022, he was the victim of identity theft. In connection with those matters, he hired a consultant known as "Alex Colvin" for cybersecurity and identity-theft consulting. *See* Appendix, Ex. C, at 36:2-16, 40:2-15 (Tr. Oct. 8, 2024 Section 341 Meeting). After Kahan hired an intelligence firm years later to determine Alex Colvin's true identity, the firm determined that Alex Colvin was simply one of many pseudonyms or aliases used by Defendant Hunter Penn.

14. During that engagement, Penn located cryptocurrency wallet files associated with the Bitcoin Assets on Kahan's Google Drive. *See* Appendix, Ex. C, at 41:9–42:4 (Tr. Oct. 8, 2024 Section 341 Meeting). In early 2022, Penn informed Kahan that recovery of the Bitcoin Assets was successful. In approximately July or August 2022, Penn told Kahan that he had moved the Bitcoin into a cold wallet, specifically a paper wallet or similar cold-storage

arrangement. *See* Appendix, Ex. C, at 43:24–45:24 (Tr. Oct. 8, 2024 Section 341 Meeting). Penn also instructed Kahan to move the Bitcoin to another wallet or cryptocurrency exchange account, but Kahan testified that he did not do so because he did not understand the instructions and could not complete the process. *See* Appendix, Ex. C, at 46:1-21 (Tr. Oct. 8, 2024 Section 341 Meeting). Penn provided an encrypted and ineffective key or other access credential for the approximately 1,200 Bitcoin that remained, in a manner that prevented Kahan or anyone other than Penn from accessing or moving those Bitcoin. *See* Appendix, Ex. C, at 47:20–48:7 (Tr. Oct. 8, 2024 Section 341 Meeting). Kahan reports that Penn announced he would be taking a "consultant fee" of approximately 650 of the Bitcoin Assets for himself. Penn thereafter began demanding money from Kahan, initially characterizing those demands as consulting fees in exchange for continued assistance, movement of the Bitcoin, or production of the necessary access credentials. Over time, Penn claimed that he had lost his ability to access those Bitcoin—but continued to demand additional payments for his purported efforts to recover that access. *See* Appendix, Ex. C, at 43:3-4, 46:17–47:12,48:7-24 (Tr. Oct. 8, 2024 Section 341 Meeting). Kahan testified that he paid Penn in excess of $1 million, and possibly more than $1.5 million, through various channels, including Cash App, Venmo, PayPal, and cryptocurrency purchased through CoinStar, MoonPay, Exodus, or other cryptocurrency-purchase services. *See* Appendix, Ex. C, at 48:22-24 (Tr. Oct. 8, 2024 Section 341 Meeting); Appendix, Ex. D, at 22:6-18, 32:6–34:2 (Tr. Dec. 27, 2024 Section 341 Meeting). Penn used multiple names and payment identities, including "Alex Colvin" and accounts under the names "Samantha Gravel" (who is believed to be an actual person and friend of Penn) and "Christopher Short." *See* Appendix, Ex. D, at 19:20–20:8 (Tr. Dec. 27, 2024 Section 341 Meeting). In or around April 2023, Penn confirmed in a message via Telegram that "there's no question of ownership at all" regarding

Kahan's ownership and original purchase of the Bitcoin Assets. *See* Appendix, Ex. N (April 2023 Telegram Messages).

15. In May 2024, investigators confronted Penn at his residence, during which Penn confirmed the Bitcoin belonged to the Debtor, indicated that "Alex Colvin" had control of the Bitcoin, and offered to help cause the Bitcoin to be transferred to the Debtor.

16. I have reviewed the Bankruptcy Trustee's November 25, 2024 formal Demand for Turnover of Property of the Bankruptcy Estate to Penn, which directed Penn to "immediately turn over . . . all Bitcoin (including keys and/or passwords and usernames) that you are holding or are otherwise controlling now or at any time in the future." *See* Appendix, Ex. E (Trustee Turnover Demand to Penn). The demand set a compliance deadline of December 6, 2024, and to the best of my knowledge, Penn has not complied.

17. I have also reviewed Penn's December 30, 2024 and January 8, 2025 emails to Special Counsel, sent using an email address associated with the name "Alex Colvin." In those emails, Penn (i) identified three wallets that he said belonged to Kahan and contained 1,000 BTC, 100 BTC, and 100 BTC, respectively; (ii) stated that "certain exploits were utilized to facilitate movement without requiring the private key" and that "those exploits have since been patched"; and (iii) characterized movements as "an unforeseen consequence of attempting to retrieve the key." *See* Appendix, Ex. O (Penn-Cuccinelli Emails).

18. On January 23, 2025, the Bankruptcy Trustee filed a *Chapter 7 Trustee's Motion To Conduct Rule 2004 Examination Of Hunter Penn* [Docket No. 121], which the Court granted on February 26, 2025 [Docket No. 145].

19. On October 2, 2025, Penn appeared for his Rule 2004 examination before Special Counsel to the Bankruptcy Trustee. During the examination, Penn (i) confirmed that

Kahan owned approximately 1,800 Bitcoin that were then property of the bankruptcy estate; and (ii) acknowledged that he had demanded payment from Kahan in exchange for moving the Bitcoin and releasing the wallet keys. Penn then abruptly walked out before the examination was completed.

20. In approximately July 2024, Kahan was introduced by his acquaintance Chris Green to Nils Trosterud, a Norwegian citizen and former colleague of Green who claimed to be the Chief Executive Officer and Chairman of NordCap. Trosterud presented NordCap and its subcontractor, Quantum, as a Bitcoin recovery contractor of last resort. On or about July 5, 2024, Kahan and NordCap entered into an initial engagement agreement under which NordCap and Quantum agreed to perform services to recover Kahan's Bitcoin.

21. I understand that, on November 25, 2024, the Bankruptcy Trustee sent a written turnover demand to Green on the same day as the demand sent to Penn, requiring immediate turnover of Bitcoin, private keys, and other access credentials by December 6, 2024. To the best of my knowledge, Green has not complied. *See* Appendix, Ex. M (Trustee's Turnover Demand to Green).

22. On or about December 6, 2024, NordCap and Quantum purportedly entered into a Software Recovery Agreement ("SRA") to recover approximately 1,000 Bitcoin held in an address ending in -l0hz. Nils Trosterud signed the SRA on behalf of NordCap.

23. I have reviewed Nils Trosterud's December 11, 2024 email to an intermediary engaged by Kahan in support of his recovery efforts. *See* Appendix, Ex. F (Nils Dec. 2024 Emails). Trosterud claimed that NordCap and Quantum had recovered the private keys for wallets containing approximately 1,810 Estate Bitcoin and would move the Bitcoin to "wallets

controlled by us." *See* Appendix, Ex. F (Nils Dec. 2024 Emails). In relevant part, Trosterud wrote:

> "We have the private key to the wallet containing 1000.00131470 BTC, as well as the same private key that we discovered when the 3rd Party accessed the same wallet to investigate the 0.0000033 BTC we sent as an unconfirmed test transaction to the wallet. At the same time, we will go for the 610 BTC wallet. The then 1810 BTC were located in 4 wallets, containing 1.000, 100, 100 and 610 BTC respectively. On June 26, 2024, the 610 BTC wallet was emptied except for 0.0001 BTC that still remain. The 610 BTC were transferred to 3 new wallets, containing 1, 3 and 606 BTC respectively. This means the 1.810 BTC are now located in 7 wallets. We will move the 1000.00131470 BTC and the 606 BTC to two new wallets, controlled by us."

*See* Appendix, Ex. F (Nils Dec. 2024 Emails). Kahan affirmed this understanding during the December 27, 2024 section 341 meeting of creditors. *See* Appendix, Ex. D, at 13:8-17 (Tr. Dec. 27, 2024 Section 341 Meeting).

24. I have reviewed Green's text messages to Kahan during the period December 10, 2024 to December 12, 2024. *See* Appendix, Ex. G (Green-Kahan Dec. 2024 Messages). On or around December 10 to 12, 2024, Green texted Kahan that Nils Trosterud had "accessed the 1,000+ wallet twice. Each time, they picked up the same private key," which Green claimed "solves everything." Green also claimed that Nils Trosterud had obtained the private keys to the 606 BTC wallet, stating that "Nils is controlling the two private keys." *See* Appendix, Ex. G (Green-Kahan Dec. 2024 Messages).

25. On January 27, 2025, Kahan began receiving calls, texts, and emails from NordCap demanding additional funds before NordCap would turn over any Bitcoin. In or around February 2025, Kahan (in his individual capacity) and NordCap purportedly entered into one or more versions of a Contingent Services Agreement ("CSA"), in which NordCap represented that it "has or has access to the technical expertise needed to recover the Bitcoin from the Bitcoin wallets." *See* Appendix, Ex. H (Contingent Services Agreement). The CSA

was subsequently revised. *See* Appendix, Ex. I. The February 3, 2025 version provided that NordCap would first transfer up to $5,000,000 in recovered Bitcoin to the Bankruptcy Trustee before taking a 20% fee "of all Bitcoin contained in the Bitcoin wallets," and that NordCap would complete the transfers within days. *See* Appendix, Ex. H (Contingent Services Agreement). NordCap did not meet the deadline. On or about February 7, 2025, the parties executed an Addendum extending the deadline to 12:00 p.m. Eastern Time on February 10, 2025, which NordCap did not meet. *See* Appendix, Ex. I (First Addendum to Contingent Services Agreement). On or about February 11, 2025, they executed a further Addendum extending the deadline to 11:59 p.m. Eastern Time on February 14, 2025, which NordCap also did not meet. *See* Appendix, Ex. J (Second Addendum to Contingent Services Agreement).

26. On February 27, 2025, Special Counsel sent additional written demand letters to Nils Trosterud personally and to NordCap, demanding turnover of all Bitcoin, private keys, passwords, wallet files, and related access credentials. *See* Appendix, Ex. K (Trustee's Turnover Demand to Nils); Appendix, Ex. L (Trustee's Turnover Demand to NordCap). No Bitcoin, keys, or access credentials were turned over in response.

27. In summary, based on the foregoing and my review of the relevant documents, I believe that:

a. **Nils Trosterud:** Trosterud held himself out as CEO and Chairman of NordCap and signed the December 6, 2024 Software Recovery Agreement on NordCap's behalf. In his December 11, 2024 email, Trosterud claimed that he and Quantum had recovered the private keys for wallets containing approximately 1,810 Bitcoin and stated that he would move the Bitcoin to "wallets controlled by us." Green corroborated in contemporaneous text messages to Kahan that Trosterud had

"accessed the 1,000+ wallet twice" and was "controlling the two private keys." Despite multiple turnover demands from the Bankruptcy Trustee and PBTC, Trosterud has not surrendered any Bitcoin, private keys, or access credentials.

b. **Quantum:** Quantum served as NordCap's technical subcontractor and began performing key-retrieval work on or about July 7, 2024. In the December 6, 2024 SRA, Quantum represented that it had "identified a private key associated with the wallet" ending in -l0hz containing over 1,000 BTC and described sending a 0.0000033 BTC test transaction to that wallet. Quantum invoiced NordCap for multiple runs of key-retrieval software through late July 2024 and for weekly periods of "keystroke monitoring" from August through October 2024. Despite formal turnover demands from PBTC, Quantum has not surrendered any Bitcoin, private keys, or access credentials.

c. **NordCap:** NordCap entered into the initial engagement agreement with Kahan on or about July 5, 2024, and subsequently entered into the SRA with Quantum on December 6, 2024, under which NordCap was to receive approximately 900 BTC from the address ending in -l0hz after Quantum's 10% fee. Rather than turning over any recovered Bitcoin, NordCap demanded additional funds and repeatedly missed contractual deadlines for delivery under the Contingent Services Agreement and its addenda. Despite formal turnover demands from both the Bankruptcy Trustee (on February 27, 2025) and PBTC (on July 31, 2026), NordCap has not surrendered any Bitcoin, private keys, or access credentials.

**The Movement of the Bitcoin Assets**

28. I understand from the blockchain information described in the Complaint and the analysis that I have performed that the Bitcoin have been subject to repeated unauthorized transfers, including, but not limited to:

i. as of August 2022, Kahan's Bitcoin was present in a single wallet with an address ending in -c7kc. On or around September 7, 2022, approximately 629 BTC were moved to an address ending in -v30x;

ii. in late October 2023, four addresses received Kahan's Bitcoin: approximately 1,000 BTC to an address ending in -l0hz, approximately 610 BTC to an address ending in -st7y, 100 BTC to an address ending in -qssr, and 100 BTC to an address ending in -gx4x;

iii. on or about June 26, 2024, approximately 610 BTC were further transferred to three addresses, including approximately 606 BTC to an address ending in -rxkm;

iv. on March 11, 2025, approximately 10 BTC were further transferred from the address ending in -rxkm to an address ending in -A22v, which, upon information and belief, is associated with Binance;

v. on December 4, 2025, approximately 1,095 BTC moved through a coordinated series of transactions into three newly funded addresses;

vi. on January 31, 2026, approximately 12 hours after the bid deadline, nearly 500 BTC moved from the address ending in -l0hz through an intermediary address and then to a newly created recipient address ending in -p0ug;

vii. on March 22, 2026, approximately 497 BTC moved from -p0ug, with 4.01 BTC sent to -5pw5 and 492.89 BTC sent to -eqt6;

viii. on June 2, 2026, approximately 494 BTC moved from -ej6c through two change addresses and were split, with 5 BTC sent to -2lz5 and 489.2 BTC sent to -ha7z; and

ix. on July 29, 2026, approximately 10 BTC moved out of the address ending in -yrlk to an address ending in -27xg, which on information and belief serves as a HyperUnit deposit address.

Upon information and belief, several of the wallets that have accepted Kahan's Bitcoin are associated with Binance. The foregoing transfers demonstrate ongoing interference with the Bitcoin Assets.

29. Defendants have demonstrated a clear pattern of unauthorized transfers of the Bitcoin Assets. The blockchain record shows multiple large-scale movements of Bitcoin, including coordinated transfers of hundreds of Bitcoin at a time, occurring repeatedly from late 2023 through as recently as July 29, 2026.

30. The most recent known transfer—approximately 10 BTC valued at approximately $650,000—occurred on July 29, 2026, just twelve days after the Sale Order was entered.

31. Monetary damages alone cannot adequately compensate PBTC for the loss of specific Bitcoin Assets because Bitcoin is a unique digital asset, the value of which can fluctuate significantly. Without relief from this Court, PBTC faces a substantial likelihood that additional Bitcoin Assets will be transferred, concealed, or permanently dissipated.

## CONCLUSION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed under penalties of perjury this 12th day of October, 2026.

/s/ Adam D. Stein-Sapir
Adam D. Stein-Sapir